UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No.  2:11CV00034 AGF |
| AUDRAIN COUNTY JOINT COMMUNICATIONS, ) ) ) ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This diversity tort action is before the Court on the motion of Plaintiff Argonaut Great Central Insurance Co. (Doc. No. 31) to strike the affirmative defense of sovereign immunity asserted by Defendant Audrain County Joint Communications ("ACJC"), a political subdivision of the State of Missouri.  The parties appeared before the Court for oral argument on June 12, 2012.  After consideration of the motion, memoranda, and oral arguments, the Court shall deny Plaintiff's motion.

### I.  BACKGROUND

According to Plaintiff's amended complaint, Hickman Foods, Inc. ("Hickman") owned and operated grocery stores, including one in Mexico, Missouri, which is in Audrain County.  ACJC is a commission that dispatches emergency services in the county.  A security alarm panel that was located at ACJC's premises and monitored directly by ACJC employees, was connected to the Hickman store in Mexico for the

store's protection. On July 24, 2006, individuals broke into the store and set a fire to avoid detection. ACJC never reported an alarm to Hickman. Prior to that time, ACJC was aware that the alarm monitoring panel was broken, yet had taken no steps to repair it.

Argonaut, Hickman's general liability insurer, filed this action as Hickman's assignee, asserting claims against ACJC for negligence (Count I) and reckless, willful, and wanton misconduct (Count II) that resulted in the July 24, 2006 fire causing damage to the store. Argonaut seeks actual damages, lost business income, and punitive damages.

Since at least 2005, ACJC was insured under a general liability insurance policy issued by American Alternative Insurance Corporation ("American"), which provided coverage for the acts alleged in Argonaut's amended complaint. The amended complaint includes an assertion that under Missouri Revised Statutes § 537.610.1,[1] ACJC waived sovereign immunity by virtue of having purchased this insurance policy.

In its answer, ACJC raises several affirmative defenses, including sovereign immunity under Missouri statutory and common law. ACJC asserts that the American policy did not include a Missouri Sovereign Immunity endorsement (stating that the policy provided no coverage for any liability for damages which were barred by sovereign immunity and that the policy was not intended to act as a waiver of any defense available to the insured) due to mutual mistake between ACJC and American, and that the

---

[1] This section provides in relevant part as follows: "Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section . . . ."

policy "has now been amended and reformed" to include such an endorsement.  Thus, asserts ACJC, it did not waive its sovereign immunity by purchasing the American policy.

Argonaut now moves the Court to strike the affirmative defense of sovereign immunity that is based on a reformation of the American policy.  Argonaut argues that ACJC cannot rely on sovereign immunity because under Mo. Rev. Stat. § 379.195, Hickman's (and its assignee's) rights under the American policy became absolute on the date of the fire, and thus not subject to reformation of that policy.  Argonaut further contends that ACJC's reformation attempt fails for various reasons, including because ACJC accepted the policy as written.[2]  ACJC maintains that the reformation is valid, and applies to Argonaut because § 379.195 is not applicable to this case.

## Discussion

It is undisputed that under Missouri law, a public entity does not waive its sovereign immunity by maintaining an insurance policy that includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity.  *See Amick v. Pattonville–Bridgeton Terrace Fire Prot. Dist.*, 91 S.W.3d 603, 604 (Mo. 2002); *Langley v. Curators of the Univ. of Mo.*, 73 S.W.3d 808, 811 (Mo. Ct. App. 2002).

Missouri Revised Statutes § 379.195 provides as follows:

1. In respect to every contract of insurance made between an insurance

---

[2]  Argonaut also argued that ACJC failed to plead reformation of the American policy with sufficient specificity under the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  This argument had been rendered moot by ACJC's amendment to its answer, with leave of Court.

> company . . . and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of . . . damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company, if liability there be, shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, or if the insured becomes insolvent or discharged in bankruptcy during the period that the policy is in operation or any part is due or unpaid, occasioned by said casualty.
>
> 2. No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

Argonaut asserts that the terms "cancellation or annulment" should be read also to include reformation of a contract of insurance. In this diversity action, the Court must attempt to predict what the Missouri Supreme Court would decide if it were to address the issue. *See Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011). "[I]n pursuing this endeavor," this Court "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." *Id.* (citation omitted); *see also Gage v. HSM Elec. Protection Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011); *Cudworth v. Midcontinent Commc'ns*, 380 F.3d 375, 378 (8th Cir. 2004) (interpreting state immunity statute).

In support of its position, Argonaut relies heavily on *Shelter Mutual Insurance Co. v. Baker*, 753 S.W.2d 646 (Mo. Ct. App. 1988). In that case, an insurer sought declaratory judgment determining rights and liabilities as related to an automobile

-4-

liability insurance policy it had issued to the defendant.  The policy provided for "automatic insurance for newly-acquired automobiles," provided that the defendant notifies the plaintiff of such acquisition within 30 days thereof and paid any required additional premiums.  While the defendant's daughter was driving a newly-acquired vehicle, eight days after it had been acquired and before notification of the acquisition to the plaintiff, she was involved in an accident in which a passenger was injured.  The defendant testified that he had no intention of electing to make the insurance policy applicable to the newly-acquired vehicle.

The Missouri Court of Appeals followed the "majority position" that an automatic newly-acquired automobile provision affords coverage during the notice period, even before notice is given or additional premiums are paid.  *Id*. at 648-49.

The court then held that what the defendant may have intended regarding coverage did not change this result.  "Any understanding between plaintiff and [defendant] after the collision is irrelevant," because under § 379.195, the injured party's rights regarding the policies commenced at the time of the collision.  *Id.* at 649.  "The insurance applied to the [newly-acquired vehicle] for 30 days without the necessity of notice or the payment of an additional premium.  [The defendant's] intention not to have it covered thereafter, or even before, does not prevent that coverage." *Id*.

*Shelter Mutual Insurance Co*. is clearly not a reformation case based upon mutual mistake.  Rather it is a case involving an agreement between an insurer and insured after a third party is injured which would compromise the rights of the injured party under the

insurance policy, a situation clearly within the ambit of § 379.195.  This Court believes that the Missouri Supreme Court would hold that § 379.195 does not apply to the reformation of an insurance contract.

As explained in *Great Atlantic Insurance Co. v. Liberty Mutual Insurance Co.*, 576 F. Supp. 561 (E.D. Mo. 1983), under Missouri law, "reformation" of an insurance contract is "not based on a *subsequent* agreement, but rather on the pre-existing agreement and intention of the parties as of the time the policy was issued." *Id*. at 565.

To support a claim for reformation under Missouri law due to mutual mistake, the party seeking reformation must show that, "1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the [contract] was prepared other than as agreed; and 3) the mistake was mutual, i.e., it was common to both parties." *Cardinal Partners, LLC v. Desco Inv. Co., L.L.C.*, 301 S.W.3d 104, 110 (Mo. Ct. App. 2010) (citation omitted).

> Thus, reformation is quite different from cancellation or annulment of a contract. Reformation is grounded in a court's equitable power to reform a contract to express the parties' original intent retroactive to the date of the original contract.  Amendment of a contract impairs a third party beneficiary's rights, but only on a going forward basis.  Reformation of a contract vitiates the third party beneficiary's status as of the date the contract was made, removing a benefit that was never intended.

*Lunceford v. Houghtlin*,  326 S.W.3d 53, 79-80 (Mo. Ct. App. W.D. 2010).

If ACJC succeeds in convincing the Court that indeed there was a mutual mistake

between ACJC and American,[3] then Hickman never had rights under the American policy with respect to the injuries alleged in the amended complaint.  In *Lunceford*, the Missouri Court of Appeals explained the difference, under general contract law, between a third-party beneficiary's rights where a contract is amended after those rights attached, and where a contract is reformed such that those rights are varied.  In the former case, the third-party beneficiary could block the amendment; in the latter case, the third-party beneficiary only had standing to challenge the sufficiency of the evidence to support the contracting parties' claim for reformation.  *Id*. 79-80.  Although the court did not cite § 379.195, the same reasoning applies in interpreting the scope of that statute.

     Nor would reformation of the policy be the result of an *agreement* between the parties reached *after* the assured has become responsible, as required by the plain language of § 379.195.  Rather, the reformation would be the result of a court order reforming the policy to conform to the parties' original agreement, reached before any loss was incurred.

     In sum, the Court concludes that the Missouri Supreme Court would allow, upon proper proof, reformation of the American policy such that the policy not act to waive ACJC's sovereign immunity, even with respect to third-parties such as Hickman/Argonaut.  Many of Argonaut's arguments address whether or not ACJC can establish the elements for reformation under Missouri law.  For example, Argonaut

---

    [3]  Reformation of a contract is an equitable remedy and thus triable to the Court.

asserts that ACJC's failure to inspect the insurance policy precludes its reformation attempt. Whether or not ACJC will convince the Court, based on a more developed record, that reformation of the American policy is in order remains to be seen. At this point in the proceedings, the Court is just deciding that Defendant is not precluded in this case from reforming the American policy such that the purchase of the policy did not waive ACJC's sovereign immunity. This decision does not affect other aspects of ACJC's affirmative defenses.

In reaching the decision to deny Plaintiff's motion to strike the affirmative defense at issue, the Court is mindful that while "[j]udges enjoy liberal discretion" under Federal Rule of Civil Procedure 12(f) to strike from a pleading an insufficient defense, doing so "is an extreme and disfavored measure." *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted).

## CONCLUSION

Accordingly,

Plaintiff's motion to strike the affirmative defense of sovereign immunity is **DENIED**. (Doc. No. 31.)

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of June, 2012.