**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.   2:11CV00034 AGF |
| AUDRAIN COUNTY JOINT COMMUNICATIONS, | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM AND ORDER</u>

This diversity tort action is before the Court on the motion of Defendant Audrain County Joint Communications ("ACJC") for summary judgment against Plaintiff Argonaut Great Central Insurance Co. ("Argonaut").   ACJC, as a tax funded 911 call center, is a political subdivision of the State of Missouri.   On this record, the Court finds that ACJC is entitled to summary judgment on the issue of punitive damages, but is not entitled to summary judgment on the issue of reformation or based on its argument that it owed no duty to Argonaut's insured and/or did not breach any duty owed.   For the reasons set forth below, the Court declines, at this time, to address ACJC's assertion that it is entitled to sovereign immunity, and shall reserve ruling on any issues of sovereign immunity until after the trial on the issue of reformation.

## BACKGROUND

After Argonaut paid its insured, Hickman Foods, Inc. ("Hickman"), for property damage caused by a burglary and fire on July 24, 2006, at a store Hickman owned, Argonuat filed this action as Hickman's assignee, asserting claims against ACJC for negligence (Count I) and reckless, willful, and wanton misconduct (Count II), all in relation to ACJC's monitoring of a security panel on its premises.   In Count II, Argonaut also seeks punitive damages.

The security panel was owned by a private security alarm company, Q Security Solutions, L.L.C. ("Q Security"), with whose predecessor in interest (Crow Security, Inc.) Hickman had contracted for a burglar alarm system.[1]   ACJC received an audible alarm at the alarm panel board when the burglars entered the Hickman store, but the light bulb on the panel corresponding to the store was not operating properly and did not light up. ACJC knew some light bulbs on the panel were inoperable.   According to ACJC's evidence, one of its employees reported this problem to Q Security, with no response from Q Security.   Two Q Security office personnel testified that they did not recall getting such a report.   On the night of the burglary and fire, instead of acting on the audible alarm, ACJC silenced it.   According to ACJC, another audible alarm went off when the burglars exited the store and ACJC called the police; an ACJC police officer testified that he did not

---

[1]    It is undisputed that after the fire, Hickman sued Q Security in state court, that ACJC was brought into the suit as a third-party defendant, that the state court judge dismissed ACJC on the basis of sovereign immunity, and that immediately thereafter, the suit between Hickman and Q Security settled.

receive such a call.

From 2005 to 2009 ACJC was located within the Audrain County Sheriff's Office. In 2009, ACJC moved into its own building.   Since at least 2005, ACJC was insured under a general liability insurance policy issued by American Alternative Insurance Corporation ("American") that provided coverage for the acts alleged in Argonaut's amended complaint.   The policy did not include a Missouri Sovereign Immunity Endorsement that states that no coverage is provided for liability for damages that were barred by sovereign immunity, and that the policy was not intended to act as a waiver of any defense (such as immunity) available to the insured.   The amended complaint asserts that under Missouri Revised Statutes § 537.610.1,[2] ACJC waived sovereign immunity by virtue of having purchased this insurance policy.

In support of its motion for summary judgment, ACJC argues that (1) as a 911 entity, it is protected from this lawsuit by statutory immunity under § 190.307.1,[3] which is

---

[2]   This section provides in relevant part as follows: "Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section . . . ."

[3]   Section 190.307 provides:

> 1. No public agency or public safety agency, nor any officer, agent or employee of any public agency, shall be liable for any civil damages as a result of any act or omission except willful and wanton misconduct or gross negligence, in connection with developing, adopting, operating or implementing any [emergency telephone services] system required by sections 190.300 to 190.340.

separate from and "overrides and supersedes" the immunity provided in § 537.600[4]; (2) the

evidence shows as a matter of law that the gross negligence exception to immunity under

§ 190.307 is not applicable here; (3) if § 190.307 is inapplicable, ACJC remains shielded

from tort liability through statutory sovereign immunity, codified in § 537.600, as Plaintiff

cannot show a dangerous condition of public property, an exception to such immunity; and

(4) the immunities available to ACJC have not been waived by the purchase of the

---

2.   No person who gives emergency instructions through a system
established pursuant to sections 190.300 to 190.340 to persons rendering
services in an emergency at another location, nor any persons following
such instructions in rendering such services, shall be liable for any civil
damages as a result of issuing or following the instructions, unless issuing
or following the instructions constitutes willful and wanton misconduct,
or gross negligence.

[4]    Section 537.600.1 provides:

Such sovereign or governmental tort immunity as existed at common
law in this state prior to September 12, 1977, except to the extent
waived, abrogated or modified by statutes in effect prior to that date,
shall remain in full force and effect; except that, the immunity of the
public entity from liability and suit for compensatory damages for
negligent acts or omissions is hereby expressly waived in the
following instances:

*      *      *

(2) Injuries caused by the condition of a public entity's property if the
plaintiff establishes that the property was in dangerous condition at the time
of the injury, that the injury directly resulted from the dangerous condition,
that the dangerous condition created a reasonably foreseeable risk of harm of
the kind of injury which was incurred, and that either a negligent or wrongful
act or omission of an employee of the public entity within the course of his
employment created the dangerous condition or a public entity had actual or
constructive notice of the dangerous condition in sufficient time prior to the
injury to have taken measures to protect against the dangerous condition.

4

American insurance policy, because the policy has been reformed.

According to ACJC, the record establishes that the American policy did not include the above-noted Endorsement due to the mutual mistake of ACJC and American, and that the policy has now been amended and reformed by ACJC and American to include such an Endorsement.   ACJC suggested at oral argument that Argonaut has no "standing" to challenge this reformation agreed to by ACJC and American, and further that the Court has no role on the reformation issue because the parties to the contract have agreed to reform it between themselves.

ACJC argues that even if its immunity is found to be waived, Argonaut cannot prove that ACJC owed a duty to Hickman, or that ACJC breached that duty.   Lastly, ACJC argues that Argonaut's claim for punitive damages fails as there is no authority for such damages in this case.

Argonaut contends that as a 911 call center, the only immunity ACJC is potentially entitled to is under § 190.307.1.   However, Argonaut argues, ACJC's alleged negligent acts (or omissions) were performed for the benefit of a private company and its clients and not for the benefit of the citizens of Audrain County as a whole, and so these acts do not fall within the parameters of § 190.307.1 and ACJC is not immune from the instant lawsuit. Argonaut argues that even if the Court concludes that ACJC's acts fall within the scope of § 190.307, Argonaut can still proceed because there is evidence of gross negligence, an enumerated exception to immunity under § 190.307.1, and additionally because ACJC's procurement of insurance waived all its immunities, whether under § 190.307.1 or §

537.600.   According to Argonaut, ACJC's reformation defense fails as a matter of law because the evidence shows that there was no mutual mistake as claimed by ACJC.

Argonaut next argues that if the Court finds that § 537.600 applies (i.e., it is not superseded by § 190.307.1) and permits reformation of the insurance policy, Argonaut can still proceed to trial under the "dangerous condition exception" of § 537.600.   Lastly, Argonaut argues that genuine issues of fact remain on the issues of whether a duty was owed by ACJC to Hickman, a duty that arose by oral understanding and a course of dealing, and whether ACJC breached that duty.   At oral argument, Argonaut acknowledged that it is not entitled to punitive damages in this case.

The parties declined to address the issue of reformation in a separate state court proceeding, and agreed that the issue of reformation should be determined by this Court, without a jury.

## DISCUSSION

### Summary Judgment Standard

In considering a motion for summary judgment a court must construe all facts and make all reasonable inferences favorable to the nonmovant.   *Ser Yang v. W. S. Life Assurance. Co*., 713 F.3d 429, 432 (8th Cir. 2013).   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "Summary judgment is not appropriate if the nonmoving party can set forth specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial."   *Ser Yang*,

713 F.3d at 432.

**<u>Reformation of the American Insurance Policy</u>**

If the insurance contract between ACJC and American is not reformed, the purchase of the policy would constitute a waiver of all immunities available to ACJC.   *See Farm Bureau Town & Country Ins. Co. of Mo. v. Am. Alternative Ins. Corp.*, 347 S.W.2d 525, 532-33 (Mo. Ct. App. 2011) (citing *Kunzie v. Olivette*, 84 S.W.3d 570, 574 (Mo. 2006)). ACJC has provided no support for its contention at oral argument that ACJC and American can, on their own, amend or reform their insurance contract in a way that would preserve ACJC's immunities even with respect to claims that arose prior to the alleged reformation. The Court concludes that ACJC's and American's amendment to their contract would apply going forward, but without a judicial order of reformation, not going backward.   *See Lunceford v. Houghtlin*, 326 S.W.3d 53, 79-80 (Mo. Ct. App. 2010) (cited by this Court in denying Argonaut's motion to strike ACJC's affirmative defense of sovereign immunity based on the after-the-fact amendment to the American insurance policy).

Under Missouri law, to support a claim for reformation due to mutual mistake, the party seeking reformation must show by clear and convincing evidence that, "1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the [contract] was prepared other than as agreed; and 3) the mistake was mutual, i.e., it was common to both parties."   *Cardinal Partners, LLC v. Desco Inv. Co.,* 301 S.W.3d 104, 110 (Mo. Ct. App. 2010) (citation omitted); *see also Black & Veatch Corp. v. Wellington Syndicate*, 302

7

S.W.3d 114, 126 (Mo. Ct. App. 2009).

Here the Court concludes that material factual disputes remain with respect to reformation of the insurance contract between ACJC and American.   *See Cardinal Partners, LLC*, 301 S.W.3d at 110 (reversing grant of summary judgment and remanding case for trial where trial court found mutual mistake and reformed a restrictive covenant; holding that trial court improperly afforded the moving party an inference with respect to the understanding and intent of the parties to the covenant).   After the parties present their evidence, the Court will make a decision on whether reformation is appropriate here.

## Issues Related to Sovereign Immunity

If the Court finds that reformation is called for, such that ACJC did not waive its immunities, the Court will then need to determine whether the conduct alleged here falls within the contours of the sovereign immunity provision found in § 190.307.1, or whether that statute, as Argonaut contends, is simply inapplicable.   If inapplicable, the Court will need to determine whether § 190.307 supersedes and supplants all § 537.600.1 immunity with respect to a 911 call center, such that ACJC would be precluded from relying on § 537.600.1.   *See State ex rel. Golden v. Crawford*, 165 S.W.3d 147, 149 (Mo. 2005) (finding, "[i]t is clear from the express language in [section 190.307] that the legislature intended for this statutory immunity to supersede the common law official immunity doctrine for the enumerated individuals and agencies.   Section 190.307 provides the shielded entities with a qualified immunity allowing civil liability only in instances where gross negligence can be established.").   Then, if § 537.600.1 immunity is not foreclosed

8

by § 190.307.1, the Court will need to address whether the exception for a "dangerous condition" found in § 537.600.1(2) could apply to these facts.

If, however, the Court determines after a trial on reformation that ACJC is not entitled to reform the policy, the Court will not need to reach any issues regarding the scope and application of Missouri's various sovereign immunity statutes, as ACJC will have waived its right to sovereign immunity.   As ACJC has repeatedly asserted, several of these legal questions have no clear answer under Missouri law, and the determination of these immunity issues could have a significant impact on public entities.   It would therefore be imprudent to address these important issues of Missouri state law unless and until it is necessary to do so.   As such, the Court shall first hold a trial on the issue of reformation, and shall address the issues related to sovereign immunity only if reformation is granted.[5]

**Argonaut's Negligence and Gross Negligence Claims**

ACJC further asserts that it is entitled to judgment as a matter of law on Argonaut's claims for negligence and gross negligence in any event, because it owed no duty to Hickman and because it cannot be found to be "grossly negligent" on these facts.

"In Missouri, the elements that must be proven in order for a party to recover for negligence are: (1) the existence of a legal duty owed to the plaintiff; (2) breach of that duty through a negligent act by the defendant; (3) proximate causation between the breach and

---

5   Although in normal circumstances the Court would attempt to address issues of sovereign immunity first, at the hearing on the motion for summary judgment the parties acknowledged that it might make sense to address the issue of reformation first.

the resulting injury; and (4) resulting damages." *Rosemann v. Sigillito*, No.

10-CV-1165-LRR, 2013 WL 3457057, at *23-24 (E.D. Mo. July 9, 2013) (citations

omitted). "A legal duty owed by one to another may arise because a party has assumed a

duty by contract or agreement whether written or oral. The law imposes upon a person

who provides services the duty to render those services with some degree of care and skill."

*Tom's Agspray, LLC v. Cole*, 308 S.W.3d 255, 261 (Mo. Ct. App. 2010) (citation omitted).

"Whether a duty exists is a question of law, but conclusions about the facts of the case are

questions for the fact-finder." *Id.* at 261-62.

Here, factual questions remain as to the agreement or understanding between Q

Security and ACJC with regard to monitoring the security panel, as to responsibilities

ACJC may have assumed with respect to the panel, and as to just what went wrong on the

night of the burglary and fire at the Hickman store. Although ACJC presents deposition

testimony of employees that they assumed no responsibility for the panel, and had no

agreement with Q Security as to their responsibilities, facts such as the panel's physical

presence at ACJC, ACJC's dealings with Q Security, and ACJC's monitoring of the panel

run counter to this assertion. Without resolving these fact issues, it cannot be determined

as a matter of law whether ACJC owed a duty of care to Hickman. Furthermore, factual

disputes, including with respect to how ACJC responded to the second audible alarm noted

above, preclude a finding as a matter of law that ACJC was not negligent or grossly

negligent in performance of any duty owed.

**Punitive Damages**

At oral argument, Argonaut acknowledged that it was not entitled to punitive damages.

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED,** except with respect to Plaintiff's request for punitive damages as to which judgment shall be granted, and the Court shall reserve ruling on whether Defendant is entitled to sovereign immunity.   (Doc. No. 83.)

**IT IS FURTHER ORDERED** that the parties shall confer, and on or before **Friday, August 9, 2013**, shall file a joint statement advising how long they believe the bench trial on reformation (scheduled to begin on **August 26, 2013**) shall take, and whether the parties wish to hold that trial in Hannibal or in St. Louis.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of August, 2013.

11