UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.  2:11CV00034 AGF ) |
| AUDRAIN COUNTY JOINT COMMUNICATIONS, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM DECISION**

This diversity tort action is before the Court for findings of fact and conclusion of law on the issue of contract reformation.   Defendant Audrain County Joint Communications ("ACJC") maintains that due to mutual mistake, the general liability insurance policy provided to it by its insurer should be reformed retroactively to include an endorsement that the purchase of the insurance did not waive ACJC's sovereign immunity for tort liability provided for by Missouri Revised Statute § 537.600.1.[1]   Plaintiff Argonaut Great Central Insurance Co. ("Argonaut") maintains that under Missouri Revised Statutes § 537.610.1, ACJC waived sovereign immunity by virtue of having purchased the

---

1   Section 537.600.1 provides, in relevant part, as follows:

>  Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect.

insurance policy at issue. The request of reformation, which the parties agreed would be determined by the Court, was severed from the jury trial on the merits. The bench trial on the issue of reformation was held on August 26 and 27, 2013.[2] Upon review of the record, including the parties' evidence and arguments, and having observed the demeanor of the one witness who testified live, reformation shall be denied.

The relevant facts are largely undisputed. On July 24, 2006, there was a burglary and fire at a store owned by Hickman Foods, Inc. ("Hickman"), which was insured by Argonaut. After Argonaut paid Hickman for the property damage caused by the burglary and fire, Argonuat filed this action as Hickman's assignee, asserting claims against ACJC for negligence (Count I) and reckless, willful, and wanton misconduct (Count II), all in relation to ACJC's monitoring of a security panel on its premises.

ACJC, as a tax-funded 911 call center, is a political subdivision of the State of Missouri. Sometime prior to August 2005, ACJC asked Patricia Jackson, an agent with Melahn Insurance Agency ("Melahn"), to shop for insurance for the newly formed 911 center. This was ACJC's first contact with Jackson. ACJC filled out a "Request for Insurance," setting forth its insurance needs. No mention was made of sovereign immunity. Indeed, the evidence shows and the Court finds that neither the ACJC representatives involved in procuring the insurance, nor Jackson, knew at that time that the

---

2   "An action to reform a written instrument in accordance with the intent of the parties was exclusively equitable, thus a claim for reformation under the Federal Rules is triable to the court." *Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 937 (8th Cir. 2013).

2

purchase of liability insurance by ACJC could waive its sovereign immunity, or the means by which such immunity could be preserved despite the purchase of liability insurance. Indeed, the subject was not considered at all.

In August 2005, Jackson presented a proposal to ACJC for general liability insurance to be provided by VFIS, a subdivision of Gladfelter Insurance Group, that met ACJC's needs as set forth in its request. (Doc. No. 89-12.) VFIS specializes in providing insurance coverage to emergency service organizations throughout the United States and Canada. In 2005, it was VFIS's general practice to include in a policy issued to a Missouri public entity, such as ACJC, a Missouri Sovereign Immunity Endorsement that states that no coverage was provided for liability for damages that were barred by sovereign immunity, and that the policy was not intended to act as a waiver of any defense such as immunity available to the insured. Indeed there was credible testimony that within VFIS such an endorsement was mandatory, that is, required by VFIS in liability policies ensuring Missouri public entities such as ACJC. But the policy prepared for ACJC did not include this endorsement. No one could explain this omission, and the evidence suggests that it was due to a mistake by VFIS.[3]

The customer service representative at Melahn, whose job it was to review policies prepared by agents to see if the policies matched what the agent quoted to the client,

---

3     ACJC did not firmly establish the omission of the endorsement was a mistake, as ACJC did not locate or depose the former employee who prepared the policy, and it is possible, but not likely, that the preparer determined the endorsement would not apply to tis entity. But, of course, it is ACJS's burden to establish the omission was a mistake.

3

approved the policy as prepared, and it was presented to ACJC.  ACJC reviewed the policy and accepted it, effective October 1, 2005, through October 1, 2006.  The policy did not include the sovereign immunity endorsement, or any other provision about sovereign immunity.  (Doc. No. 89-14, 15.)  The absence of the endorsement was not noted when the policy was renewed in 2006.  Based on the evidence presented at the bench trial, the Court finds that this, too, was likely a mistake on the part of VFIS, and that when the policy was renewed in 2006, neither ACJC nor Jackson knew about waiving and/or preserving ACJC's sovereign immunity.

This lawsuit was filed on May 2, 2011.  In December 2011, during discovery, ACJC realized that the endorsement was not part of its VFIS liability policy, and that this might mean it had waived its immunity relevant to the suit.  Thereafter, by agreement, ACJC and VFIS proceeded to amend the policy by adding the endorsement.

As noted above, Argonaut maintains that ACJC waived sovereign immunity by virtue of having purchased the VFIS policy.  Argonaut maintains that while the amendment to the policy by ACJC and VFIS is effective going forward, it has no retroactive effect.  According to ACJC, the record establishes that the VFIS policy did not include the above-noted endorsement due to the mutual mistake of ACJC and VFIS. Argonaut responds, however, that ACJC's reformation argument fails as a matter of law because the evidence shows that there was no mutual mistake as claimed by ACJC.

Under Missouri law, to support a claim for reformation due to mistake, the party seeking reformation must show by "clear and convincing" evidence that, "1) a preexisting

4

agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the [contract] was prepared other than as agreed; and 3) the mistake was mutual, i.e., it was common to both parties." *Cardinal Partners, LLC v. Desco Inv. Co.,* 301 S.W.3d 104, 110 (Mo. Ct. App. 2010) (citation omitted); *see also Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 126 (Mo. Ct. App. 2009).

> [I]n demonstrating a pre-existing agreement between the parties consistent with the change sought, it is sufficient to show that the parties agreed to accomplish a particular object and that the instrument was insufficient to effectuate that intent.   Even circumstantial evidence can establish such agreement, provided that natural and reasonable inferences drawn from such evidence clearly and decidedly prove the alleged mistake.

*Mo. Land Dev. I, LLC v. Raleigh Dev., LLC*, ___ S.W.3d ___, 2013 WL 3246389, at *8 (Mo. Ct. App. June 28, 2013) (citing *Lunceford v. Houghtlin*, 326 S.W.3d 53, 65 (Mo. Ct. App. 2010); *see also Smith Flooring, Inc.,* 713 F.3d at 937) ("a party seeking reformation [under Missouri law] must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intentions of the parties") (citation omitted).

In this context, "clear, cogent and convincing evidence is that which instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Smith Flooring, Inc.*, 713 F.3d at 939 (citation omitted).   "This degree of proof relates not only to the existence of a mutual mistake, but also to establishment of the actual agreement

5

allegedly made." *Thompson v. Koenen*, 396 S.W.3d 429, 434 (Mo. Ct. App. 2013).

Here, even if the Court finds that VFIS mistakenly did not include the sovereign immunity endorsement with the policy it presented to ACJC, this was a unilateral mistake, not a mutual mistake. The only evidence of a preexisting agreement, explicit or implicit, between VFIS and ACJC that the liability policy would include the endorsement or some policy provision to preserve ACJS's sovereign immunity, is VFIS and ACJC's after-the-fact amendment to ACJC's policy.[4] This however falls far short of clear and convincing evidence, in light of the contrary evidence in the record that establishes that in 2005 and 2006 ACJC did not think about whether its statutory sovereign immunity would be waived or preserved with its purchase of the insurance.

*Lunceford*, 326 S.W.3d 53, relied upon by ACJC is inapposite. In that case the court reformed a release between settling parties that stated that it released all entities from liability for an accident, to state that it released only the settling parties. This was based upon clear and convincing evidence that each of the parties to the release understood at the time it was entered into that it only pertained to the settling parties. *Lunceford*, 326 S.W.3d at 67-69. Here, the Court concludes that there is insufficient evidence that ACJC had a prior understanding or presumption that the VFIS policy would not waive its sovereign immunity. To the contrary, the evidence noted above that in 2005 and 2006 the ACJC representatives involved and Jackson did not know about waiving or preserving

---

4 Of course, it is in both ACJC's and VFIS's financial interest to reform the contract in a manner that might eliminate Plaintiff's claim in this lawsuit.

ACJC's sovereign immunity, negates such a presumption. *Cf. Merch. White Line Warehousing Inc., v. City of Des Moines*, No. 00-1938, 2003 WL 1022838, at *6-7 (Iowa Ct. App. March 12, 2003) (affirming reformation of a city's liability insurance policy to include a government immunity endorsement where clear and convincing evidence showed that at the time it was negotiating for the policy, the city impressed upon its insurance broker the need for the endorsement and the insurer intended to include the endorsement but mistakenly omitted it.) While it may be true that ACJC and VFIS did not discuss waiving sovereign immunity, it is equally clear that the parties never discussed -- and never had a meeting of the minds -- with respect to preserving sovereign immunity. As such, ACJC has not and cannot meet its heavy burden to establish an entitlement to reformation.

## **CONCLUSION**

The Court concludes that ACJC did not meet its burden of presenting clear and convincing evidence of a preexisting agreement between ACJC and VSIF to include the sovereign immunity endorsement in the FSIV policy issued to ACJC, and the Court will not reform the policy in that regard.

Accordingly,

**IT IS HEREBY ORDERED** that ACJC's Request for Reformation is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall confer, and on or before **September 19, 2013**, shall file a joint notice (i) identifying whether any previously-asserted issues remain for determination prior to trial; (ii) estimating the

7

number of days necessary for the jury trial; and (iii) advising whether the parties wish to try the case in St. Louis or in Hannibal. The case shall be tried in Hannibal unless both parties consent to trial in St. Louis.

                                              *Audrey G. Fleissig*
                                              AUDREY G. FLEISSIG
                                              UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2013.

8