United States Court of Appeals
For the Eighth Circuit
_____

No. 13-3252
_____

Argonaut Great Central Insurance Company

*Plaintiff - Appellee*

v.

Audrain County Joint Communications

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal
_____

Submitted: March 9, 2015
Filed: March 17, 2015
_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.
_____

BYE, Circuit Judge.

    Argonaut Great Central Insurance Company (Argonaut) sued Audrain County Joint Communications (ACJC) alleging ACJC's negligence in monitoring a security alarm panel caused or contributed to damages arising out of the burglary and fire of a grocery store insured by Argonaut.  ACJC brought a motion for summary judgment arguing it was entitled to sovereign immunity as a Missouri state entity, and to

statutory immunity as a 911 call center.  The district court[1] denied summary judgment after finding ACJC had waived its sovereign and statutory immunity by purchasing insurance.  ACJC then filed this interlocutory appeal challenging the district court's order denying summary judgment.  We dismiss part of the appeal for lack of jurisdiction, and otherwise affirm.

I

The origins of this suit date back to 1977, when Hickman Foods, Inc. (Hickman's) contracted with a private company for burglar alarm services at its IGA grocery store in Mexico, Missouri.  Hickman's originally contracted with a company called Crow Security, Inc.  In 2005, Q Security Solutions, L.L.C., (Q Security) purchased Crow Security.  The purchase agreement between the two security companies provided that Q Security would take over Crow Security's contracts, including the contract with Hickman's.

For reasons not fully explained in the record before us, Q Security's alarm panels were located at the public 911 call center operated by ACJC.  Public employees at the ACJC call center monitored the private company's alarm panels. When an alarm at a Q Security customer's location was triggered, ACJC employees would hear an audible alarm at the panel board.  As soon as the audible alarm sounded, a light bulb corresponding to a particular customer was supposed to illuminate. In April 2006, however, two ACJC employees tested the Q Security alarm panels and discovered six of the light bulbs – including the one for Hickman's IGA – were not working.  Argonaut asserts that the two ACJC employees reported the problem to their supervisor, but ACJC never informed Q Security of the inoperable bulbs and the problem was never rectified.  ACJC disputes Argonaut's assertions.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

-2-

About three months later, on July 24, 2006, burglars entered the Hickman's IGA grocery store and triggered the store's alarm system.  The audible alarm sounded at the ACJC call center, but the dispatcher on duty was unable to tell which particular Q Security customer's alarm had been triggered because no corresponding light bulb illuminated.  Argonaut asserts the dispatcher ignored the audible alarm.[2]  The burglars set fire to the grocery store before fleeing the scene.  Thirty minutes after the first audible alarm had sounded at ACJC, a second audible alarm sounded, likely triggered by the burglars setting fire to the building.  Argonaut asserts the dispatcher at ACJC again ignored the alarm.  About thirty minutes later (approximately a full hour after the first audible alarm had sounded at ACJC), a passerby saw smoke coming out of the grocery store and called 911 to report the fire.  By the time the fire department suppressed the fire, it had caused more than $2 million in damages.

The grocery store was insured under a policy issued by Argonaut.  After Argonaut paid Hickman's for the property damage caused by the burglary and fire, Hickman's assigned to Argonaut the right to sue any parties that may be responsible for the damage.  In May 2011, Argonaut filed this action against ACJC in federal district court alleging ACJC's negligence in monitoring Q Security's alarm panels caused or contributed to the damages arising out of the burglary and fire.  Argonaut also asserted ACJC had waived its sovereign immunity by purchasing a liability insurance policy through American Alternative Insurance Corporation (the Policy).[3]

---

[2] The dispatcher says she contacted a police officer to report the audible alarm had sounded, but the officer to whom she spoke said he was not going to check every Q Security customer to determine at which location an alarm had been triggered. Argonaut asserts there is no record of the dispatcher having made such a call.

[3] Section 537.610 of the Missouri Revised Statutes states the political subdivisions of the state "may purchase liability insurance for tort claims[] made against the state or the political subdivision" and if they do so "[s]overeign immunity for the state of Missouri and its political subdivisions is waived . . . to the maximum amount of and only for the purposes covered by such policy of insurance[.]"

Argonaut further asserted the inoperable light bulbs on the alarm panel at the ACJC call center amounted to a dangerous condition of property, such that sovereign immunity would not apply in any event.[4] Finally, Argonaut asserted ACJC acted with gross negligence by consciously ignoring the problems with the alarm panel, and thus was not entitled to the statutory immunity the call center might otherwise have under Section 190.307 of the Missouri Revised Statutes.[5]

ACJC filed a motion for summary judgment. In relevant part, ACJC asserted that it and its insurer had retroactively reformed the Policy to include an endorsement excluding coverage for claims to which its sovereign immunity applied. ACJC also argued it was entitled to statutory immunity under § 190.307 for its operation of an emergency 911 call system.

The district court denied ACJC's motion for summary judgment on the issue of immunity. In a bench trial, the district court decided the threshold question

---

[4]Section 537.600 of the Missouri Revised Statutes generally provides that the state of Missouri and its political subdivisions have common law sovereign immunity "from liability and suit for compensatory damages." The general rule is subject to two exceptions, however, one of which is when injuries are caused by a dangerous condition of a public entity's property in certain situations. See Mo. Rev. Stat. § 537.600.1(2).

[5]Section 190.307 of the Missouri Revised Statutes provides in relevant part:

> No public agency or public safety agency, nor any officer, agent or employee of any public agency, shall be liable for any civil damages as a result of any act or omission except willful and wanton misconduct or gross negligence, in connection with developing, adopting, operating or implementing any plan or system required by sections 190.300 to 190.340.

Sections 190.300 to 190.340, in turn, discuss the operation of an emergency 911 telephone service.

-4-

whether ACJC and its insurer had properly reformed the Policy to include an endorsement preserving the call center's sovereign immunity. The district court found ACJC failed to prove by clear and convincing evidence that it had a pre-existing agreement with its insurer to preserve sovereign immunity. The district court further determined ACJC's purchase of insurance waived both its common law sovereign immunity and any statutory immunity it might enjoy under § 190.307 as a 911 call center.

ACJC then filed this interlocutory appeal. On appeal, ACJC argues the district court erred in denying its request to reform the contract to include an endorsement preserving its sovereign immunity. It further argues its statutory immunity under § 190.307 is distinct from its common law sovereign immunity, and that its purchase of insurance did not waive this separate statutory immunity. In addition, ACJC challenges aspects of the district court's order unrelated to immunity, such as a determination that there are genuine issues of material fact about whether ACJC owed a duty to Hickman's IGA under the facts of this case. Argonaut filed a motion to strike most of ACJC's brief on the grounds that we have limited jurisdiction in an interlocutory appeal raising an issue of sovereign immunity. Argonaut contends the only issue over which we have jurisdiction is the district court's determination that ACJC's purchase of insurance waived not only its common law sovereign immunity, but also any statutory immunity ACJC might enjoy under § 190.307 as a 911 call center.

II

Before reaching the issues raised by ACJC, we must address Argonaut's jurisdictional concerns.

"Ordinarily, we lack jurisdiction over an interlocutory appeal challenging the denial of summary judgment, but an immediate appeal is appropriate where summary

judgment is denied on the grounds of sovereign immunity or qualified immunity, because immunity is effectively lost if a case is erroneously permitted to go to trial." Van Wyhe v. Reisch, 581 F.3d 639, 647-48 (8th Cir. 2009) (internal quotation marks and citations omitted). The key to our jurisdiction over an interlocutory appeal addressing sovereign immunity is whether the immunity is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Where a state statute merely provides immunity from liability for damages, rather than complete immunity from suit, interlocutory review is not appropriate. See Liberal v. Estrada, 632 F.3d 1064, 1074 (9th Cir. 2011) (listing the circuit court decisions which have applied the principles of Mitchell v. Forsyth to the denial of summary judgment on the issue of state sovereign immunity and recognized that an interlocutory appeal is only available when state law provides immunity from suit).

The collateral order doctrine does not permit interlocutory review "[w]here immunity from liability is involved [because] any error of the district court is effectively reviewable in an appeal from the final judgment." Gray-Hopkins v. Prince George's Cnty., Md., 309 F.3d 224, 231 (4th Cir. 2002). "[T]he right to an interlocutory appeal from the denial of a claim of . . . immunity under state law can only exist where the state has extended an underlying substantive right to be free from the burdens of litigation[.]" Brown v. Grabowski, 922 F.2d 1097, 1106-07 (3d Cir. 1990) (internal quotation marks and citation omitted).

With these principles in mind, we turn to an examination of the two sources of immunity involved in this case, Missouri Revised Statutes §§ 537.600 and 190.307.

Section 537.600 generally preserves Missouri's "sovereign or governmental tort immunity as existed at common law[.]" In addition, the statute specifically refers to "the immunity of [a] public entity from liability and suit[.]" Id. By granting not only immunity from damages, but also immunity from suit, the Missouri legislature clearly extended to ACJC the substantive right to be free from the burdens of litigation for

-6-

the negligence claim Argonaut brought against it unless, of course, ACJC waived such immunity. As a result, we have jurisdiction in this interlocutory appeal over the question whether ACJC's purchase of insurance waived the common law sovereign immunity it might otherwise enjoy under § 537.600.[6]

---

[6] At oral argument, Argonaut's counsel argued the necessity for a trial on its dangerous condition claim robs us of jurisdiction to address whether ACJC waived its sovereign immunity by purchasing insurance. In its summary judgment order, the district court left unresolved the question whether the exception for a dangerous condition found in § 537.600.1(2) could apply to the facts of this case. The district court reasoned that it need only address the exception if it first determined ACJC had not waived its common law and statutory immunity. Arguing ACJC will have to face the burden of a trial on the dangerous condition claim irrespective of whether we address the insurance waiver issue now, or wait until an appeal from a final judgment, Argonaut's counsel contends interlocutory review of the waiver issue is inappropriate. See, e.g., Schrob v. Catterson, 967 F.2d 929, 942 (3d Cir. 1992) (dismissing an interlocutory appeal of an immunity issue in a case alleging "numerous theories of recovery [all] stem[ming] from the same common nucleus of fact" where a trial would be necessary on some claims, reasoning "little would be gained by permitting immediate appeal of the denial of immunity of some claims where other claims for money damages remain").

We disagree the presence of the unresolved dangerous condition claim precludes us from addressing whether ACJC is immune from suit for the separate negligence claim brought against it. See Behrens v. Pelletier, 516 U.S. 299, 311-12 (1996) (addressing jurisdiction over an issue of immunity in an interlocutory appeal of a multiple-claim suit and concluding "when immunity with respect to [some] claims has been finally denied, appeal must be available, and cannot be foreclosed by the mere addition of other claims to the suit").

One additional comment about the dangerous condition claim is warranted. ACJC's appeal brief arguably contends the evidence to support application of the dangerous condition exception is insufficient as a matter of law. The district court did not, however, enter a final order on the exception, reasoning that its resolution of the § 537.600 and § 190.307 immunity issues rendered such a decision unnecessary. Because the district court did not dispositively address the dangerous condition exception in its order denying summary judgment, we lack jurisdiction to address ACJC's argument regarding the sufficiency of the claim.

-7-

Section 190.307, in turn, provides that "[n]o public agency . . . shall be liable for any civil damages as a result of any act or omission except willful and wanton misconduct or gross negligence, in connection with" the operation of a 911 system. The statute does not refer to immunity from suit, but merely provides ACJC limited protection from liability for damages. As a consequence, the statute does not extend to ACJC a substantive right to be free from the burdens of litigation. We therefore lack jurisdiction in this interlocutory appeal to address the question whether ACJC's purchase of insurance also waived any statutory immunity it might enjoy under § 190.307 as a 911 call center.[7]

### III

Having satisfied ourselves we have jurisdiction over the question whether ACJC waived § 537.600 immunity through the purchase of insurance, we turn to the merits of that issue. In the district court, ACJC asserted that it and its insurer had retroactively reformed the Policy by attaching an endorsement which excluded coverage for claims to which its sovereign immunity applied. See Langley v. Curators of the Univ. of Mo., 73 S.W.3d 808, 811 (Mo. Ct. App. 2002) ("A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity."). ACJC contends the district court erred in the bench trial by finding ACJC had not proven the Policy had been properly reformed.[8]

---

[7]Having concluded we lack jurisdiction in this interlocutory appeal over the broader question whether ACJC is immune from suit under § 190.307 as a 911 call center, we similarly lack jurisdiction to address ACJC's narrower contention that the gross negligence claim alleged by Argonaut – which is an exception to the limited immunity granted under § 190.307 – is insufficient as a matter of law.

[8]"Although we may not review in an interlocutory appeal a district court's finding that certain facts are in dispute," Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003), here the bench trial resulted in a final resolution

To prove its claim for reformation, ACJC had to present evidence that it and its insurer had a pre-existing agreement to attach the sovereign immunity endorsement to the Policy and made a mutual mistake when they failed to do so. See Cardinal Partners, LLC v. Desco Inv. Co., 301 S.W.3d 104, 110 (Mo. Ct. App. 2010) (providing that a party must prove the following elements to reform a written instrument: "1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the [written instrument] was prepared other than as agreed; and 3) the mistake was mutual, i.e., it was common to both parties").

In addition, "[r]eformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." Ethridge v. TierOne Bank, 226 S.W.3d 127, 132 (Mo. 2007) (internal quotations omitted). As a consequence, there is a high burden of proof for the party seeking reformation: "The court can reform a written instrument only upon clear, cogent, and convincing evidence that leaves no room for reasonable doubt." Cardinal Partners, 301 S.W.3d at 110.

We agree with the district court that ACJC did not present sufficient evidence of a pre-existing agreement, let alone prove such an agreement by clear, cogent, and convincing evidence. The testimony presented to the district court in the bench trial showed ACJC never discussed sovereign immunity, or even thought about immunity, when it sought a policy from an insurance broker. Similarly, ACJC's evidence failed to show that representatives of the insurer ever discussed sovereign immunity with

---

of a threshold fact question necessary to determine whether ACJC had waived its immunity. This is different than a finding that facts are in dispute. This is a situation where AJCJ may lose its immunity if the case is erroneously permitted to go to trial. We therefore have jurisdiction to review the result of the bench trial in this interlocutory appeal.

-9-

ACJC. In addition, ACJC accepted the Policy as written and renewed it several times even though the Policy did not contain an endorsement preserving sovereign immunity. See, e.g., Dairy Farmers of Am. v. Travelers Ins. Co., 292 F.3d 567, 575 (8th Cir. 2002) (finding no grounds for reformation where an insured accepted insurance policies as written and renewed the policies). Based upon this record, we find no clear error in the district court's determination that ACJC did not prove the existence of a pre-existing agreement between itself and the insurer to include the sovereign immunity endorsement with the original policy.

IV

We affirm the district court's determination that ACJC waived the common law sovereign immunity provided by § 537.600 through its purchase of insurance. We dismiss the remaining portions of this interlocutory appeal for lack of jurisdiction.[9]

_____

---

[9]Because our jurisdiction was contested and unclear, we deny Argonaut's motion to strike the portions of ACJC's brief that addressed issues we ultimately determined we lack jurisdiction to consider.

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

March 17, 2015

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 13-3252  Argonaut Great Central Ins. v. Audrain County Joint

Dear Sirs:

An opinion was filed today in the above case after granting appellant's petition for panel rehearing, and vacating the Court's opinion and judgment of 02/11/2015.

Counsel who represented the appellant were Kent L. Brown and Judith Anne Willis of Jefferson City, MO.

Counsel who represented the appellee were T. Michael Ward, Richard D. Gerber, and Matt R. Leffler of Saint Louis, MO.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

MER

Enclosure(s)

cc:   Lois Law
      MO Lawyers Weekly

District Court/Agency Case Number(s):   2:11-cv-00034-AGF

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

March 17, 2015

Ms. Judith Anne Willis
Suite A
621 E. McCarty Street
Jefferson City, MO  65101

RE:  13-3252  Argonaut Great Central Ins. v. Audrain County Joint

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

MER

Enclosure(s)

cc:     Mr. Kent L. Brown
        Mr. Richard Gerber
        Mr. Matt R. Leffler
        Mr. Gregory J. Linhares
        Mr. T. Michael Ward

District Court/Agency Case Number(s):   2:11-cv-00034-AGF